LAWRENCE, an infant by her guardians *vs.* LAWRENCE and others.

---

A, by will, after devising specific legacies, bequeathed to his daughter C. 4000 dollars on her marriage, to the intent that she might receive as much as his other children, to all of whom he had made large gifts on their marriages. He devised, with limitations, a dwelling-house to each of his four daughters, including C. (The son had one given to him during A.'s lifetime.) A fifth part of the residue of his estate was left to each child. A. married after making the will, and, by codicil, bequeathed to every after-born child "an "equal share of my property with my other children, notwithstanding it "may have been hereinbefore appropriated." There was an after-born daughter : *Held*, that C.'s share was the standard for setting out the posthumous child's rights; and, therefore, the latter was entitled to four thousand dollars, a house equal in value to C.'s, and a sixth of the residue. Also, that the after-born daughter took upon the same trusts and limitations to which the other daughters were subject.

---

AUGUSTINE H. Lawrence, of the city of New York, Esq. duly made his will on the eighteenth day of August, one thousand eight hundred and twenty-three. He was then a widower. After certain bequests, he gave and devised as follows : " Item, " I give to my said daughter Catharine Luqueer Lawrence " the principal sum of four thousand· dollars, to be paid to " her by my said executors upon her marriage and the in- " terest of the said sum from the time of my decease until the " day of her marriage, to the intent that she may receive as " much as my other children, to all of whom I have made large " gifts upon their respective marriages." He then goes on to

31

give a dwelling-house and lot of ground to each of his married daughters, three in number, for life, with remainder to their children in fee; and also to the said Catharine Luqueer Lawrence (who is an unmarried daughter) a house and lot, for life, subjecting it to like limitations as affected the properties given to the other daughters, in case of her marriage. In case of the death of any of the daughters without issue, the house and lot of the party so dying was to fall into the residue. As to such *residue of his estate,* the testator gave one-fifth part to his son Augustine N. Lawrence his heirs and assigns; and the executors and trustees of the will were to hold the other four-fifths thereof upon trust, to divide and set apart one of the said fifth parts to and for the use of each of his daughters for life, with remainder to their children *per stirpes.* The will invested the executors with general powers.

Afterwards, and on the tenth day of November, one thousand eight hundred and twenty-five, the testator married a second wife.

On the twenty-eighth day of September, one thousand eight hundred and twenty-seven, he executed a codicil in the following words: " I hereby confirm the above as my last will and " testament. My marriage since the date thereof and the " birth of a child or children is by no means to be considered " as a revocation of the same, with this exception and addition " nevertheless: in case of any child or children being hereafter " born to me from my present wife, such child or children shall " have an equal share of my property with my other children, " notwithstanding it may have been hereinbefore appropri- " ated."

The testator died on the tenth day of the same September.

The complainant, Augusta E. Lawrence, was the only issue of the second marriage ; and she now filed her bill in this court against the executors of the will and the children by the former marriage—claiming an account, and that her share of the real and personal estate of the testator and of the income thereof since his death might be set apart and be paid to the complainant or her guardians. Also, that in ascertaining and setting apart her said share or interest in the said estate, regard might

be had to the specific devises made to the other children and she have an equivalent for such specific devises out of the other parts of the estate.

The bill had also another object: to fix the son of the testator as a partner with the father, in consequence of heavy claims upon the firm of "A. H. Lawrence & Co." which would otherwise have to be all borne out of the testator's estate.

The son, by his answer, denied the partnership.

The daughters of the first marriage admitted the general circumstances in the complainant's bill; but their answer contained the following clauses: " And these defendants further " say, that as to the value of the several houses and lots and " of the several articles of personal property so specifically " devised and bequeathed by the said will as aforesaid, they " are unable to set forth the same with certainty ; and they " are advised and do therefore insist that the complainant is not " entitled, by virtue of the codicil to the said will, to any in- " terest therein or to any equivalent or compensation in respect " thereof or of any part or proportion thereof: but whether " the said complainant is entitled to one-sixth part of the " residuary estate of the testator is a question which these " defendants, without wishing to controvert the same, re- " spectfully submit to the judgment of this honorable court. " And these defendants are advised and do therefore insist, " that if the said complainant is entitled to the said one- " sixth part of the said residuary estate or to any other or " different share or portion in virtue of the said codicil, the " same must be taken subject to the like trusts, restrictions, " conditions and limitations which, in and by the said will, are " prescribed in respect to the other daughters of the testator." A schedule was annexed to this answer, which set forth the value of the specific devises and bequests to the children of the first marriage: but it did not contain a statement of the gifts which had been given in the lifetime of the father. By this schedule, the property coming to Catharine Luqueer Lawrence under the will was valued at thirteen thousand eight hundred and sixty-seven dollars and thirty-eight cents, while not one of

the shares of the other daughters was set down at more than seven thousand five hundred and forty-five dollars.

The answer of the executors went to matters of account.

The interesting point in this case was as to the share of the posthumous child.

Mr. *David B. Ogden* and Mr. *Gerardus Clark*, for the complainant.

I. The complainant, by virtue of the codicil, is entitled to, one equal share, with the other children, of the testator's estate; and the testator himself directed the mode of ascertaining the amount of such share by the provisions of the will in respect to his daughter Catharine.

II. The testator having given to the complainant her share without restriction, it is not competent for the court to impose restrictions which the testator did not think proper to do.

(The third point went upon the question of partnership between the testator and his son.)

Mr. *J. I. Roosevelt, jr.* and Mr. *R. Sedgwick*, for the daughters by the first marriage.

I. The testator meant to give and did give an equal share of the residuary estate only.

There is no doubt about the words " equal share." There is no case where these words have ever been held to have but one meaning. The only question they have given rise to is, whether they created a tenancy in common where a joint tenancy would otherwise have existed: *Roper on Leg.* 265—6. The difficulty in this case arises from the subject to which the equality applies. We cannot resort to parol evidence in regard to any gift to the son or other children, for the purpose of ascertaining what the testator meant by " equal share." The language of the codicil is, " such child shall have an equal " share of my property, notwithstanding it may have been " hereinbefore appropriated." It would be doing violence to this language to say that the testator meant to include property

which was not his at the time of making the codicil. This
codicil cannot be extended beyond its own plain meaning.
What does it mean by " an equal share of my property ?" It
is not to be supposed the testator intended to give the complai-
nant more than his son, and yet he gives his son but one-sixth
of the residue. Nor can it be supposed the houses are of
equal value ; and if not, the complainant cannot take an equal
share with either of the other daughters by any division with
them or by taking the share of Catharine Luqueer Lawrence
as a standard. Indeed, the construction that her house is to
be taken as the measure of the value or amount to be set apart
for the complainant, is entirely arbitrary, and has no foundation
in the will. The only fair conclusion is, that the complainant
takes that of which alone equality of distribution or division
is practicable or predicable, namely, one-sixth of the residuary
estate. If the child takes more than we contend, then she
must take a portion of the specific bequests as well as devises.
If she takes more than we contend, she must take one-sixth of
each house. She cannot take an equivalent in value. There
is no authority for this. She takes a portion of each part of
the estate. If this be not so, what would be the consequence
of a failure of title as to part? The testator never meant to
create the embarrassments which would arise from having an
infant or infants brought in as tenants in common with each of
his daughters.

II. The complainant is placed on the same footing with the
other defendants and does not take an absolute estate. This
is a necessary inference from the codicil. She is to have " an
" equal share," &c. The equality designed has reference as
well to the quality of the estate as to the thing or property
itself. An estate in fee can never be considered equal to an
estate for life. If any of the other daughters should die with-
out issue, living the complainant, she would get a share of
their estate. Must they not have an equal chance to get a
share of hers? The case of *Crone* v. *Odell*, 1 *B. & B.* 458,
478, seems to be in point. This branch of the argument might
be extended. Besides this idea of equality, it is not to be sup-
posed the testator meant to dispense with the protection and

security of the trustees in regard to the children whose tender years most imperiously required it.

Mr. *David B. Ogden* and Mr. *Gerardus Clark*, in reply.

If the intention of the testator was, to give the posthumous child an equal share of the residuary estate only, it is very extraordinary that he should have used words which convey an exactly opposite meaning. The words are, "an equal "share of my property," which term embraces the whole estate and all that a man is worth: 1 *Rob. on Wills*, 410. And in the construction of wills, it is to be presumed the testator was acquainted with the rules of law: 2 *Meriv*. 22. The difficulty of a difference in the value of the portions and shares is at once obviated by taking Catharine's portion as the standard, which the testator clearly intended it to be. The testator has himself equalized the portions of his children. In one respect, the will and codicil are different instruments; but for all the purposes of ascertaining the intention of the testator, they are one and the same and executed at the same time: 1 *Roberts on Wills*, 351. The effect of a republication, by codicil, is to give the words in a will the same operation as they would have had if the will had been made at the time of the republication: *Powell on Devises*, 683. In this case, from the whole tenor of the will and codicil, it is evident the testator intended to make all his children equal; and where the general intent is manifest, the court will find a mode of carrying it into effect: 4 *Vesey jr*. 329. The inconvenience resulting from our construction is no argument against it: 1 *Meriv*. 417; 8 *Cow*. 422. And if the clause in the codicil (according to its plain and obvious meaning) is repugnant to or inconsistent with the clauses of the will, still the codicil must prevail: 5 *Ves*. 243; 6 *ib*. 100. The business of a codicil is to alter, explain, add or subtract something from the will: *Powell on Dev*. 24; and the testator, by the very terms of the codicil, confirms the will only so far as it may be consistent with the former.

The share of the complainant is not to be placed under the same restrictions and limitations as those of the other daughters. To give to the codicil the construction contended for, would

indeed be putting words into the testator's mouth which he never used. It would be making a will for him. The devise in the codicil is absolute and certain; and when the words of a bequest are positive, they are not to be controlled by inference and argument from other parts of the will: 5 *Ves.* 801; 8 *Ves.* 42; 9 *East,* 267. The authority cited by the counsel from 1 *B. & B.* 458, by no means sustains his position. In that case, the testator had devised all his estate to A. B. and C. and their issue, with limitations, and the question was, as to the extent of those limitations according to the terms used in making them and in reference to the persons claiming under the very clause containing the limitations. But in our case, the attempt is to impose limitations by implication where none are expressed in the devise. No authority can be found which goes to this extent. It was not known what the sex of the child would be; and in this uncertainty, as well as for other reasons, the testator did not think proper to impose any limitations. Had any restriction been intended, he would doubtless have added, "if a daugh-" ter, her share is to be subject to the same restrictions as those " of my other daughters." He did not choose to say so, and no one has a right to say it for him. The prudence or imprudence of the disposition affords no fair ground for controlling the will: 4 *Ves.* 340: 1 *Meriv.* 194. And how is the trust to be created; and who are the trustees for the complainant? In regard to the other daughters, the testator expressly devised to the executors the four-fifths of the residuary estate intended for them, and made the executors their trustees: but has he, by the codicil, devised to the executors the share of the complainant? Can the court thus, not only create the trust but also appoint the trustee by implication and inference? Would any person be satisfied with a conveyance executed by these trustees of any portion of this child's property? The doctrine contended for would lead to endless embarrassment, and cannot be sustained by authority, necessity or sound policy,

THE VICE-CHANCELLOR. From the importance of the questions which I am called upon to consider in this case, I have been induced to examine it with great care. The settle-

*1832.*

LAWRENCE
*v.*
LAWRENCE.

*January 30.*

ment of a large estate depends upon the construction to be given to the will; and the result involves the interests not only of the parties before the court but of those who may come after them.

By the codicil, or, as it may with propriety be called, the last clause of the will, (since it is an express confirmation and republication of the will and the whole is made to speak from that time as one instrument,) it is declared, that this after-born child shall have an equal share of the property with the other children, notwithstanding it may have been thereinbefore appropriated.

If in the previous part of the will the testator had simply given to his five children the whole of his estate, equally to be divided between them, or, to each an equal fifth part thereof, there would have been no difficulty under the latter clause or codicil: because, then their shares being equal and the complainant coming in for an equal share with the rest, the estate would have to be divided into six instead of five parts. The difficulty arises from the circumstance of the testator's other children not taking equal shares or parts in the whole estate, but only in the residue, after the particular bequests and devises are satisfied. On this account, it is said, the complainant cannot have an equal share with the others, because they are all unequal among themselves.

This argument is endeavoured to be surmounted by recurring to what is given to Catharine, as being the common measure or standard of equalization; and it is urged, that the testator has there pointed out what is to be deemed an equal share of his "property," in the sense in which he has subsequently used this expression; and such equal share is said to consist of the sum of four thousand dollars for a marriage portion, a house and lot of the value of the house and lot devised to Catharine, and an equal proportion of the residue according to the number of the children. If the language of the will sufficiently indicates such to be the intention, it is proper to adopt it as the criterion for an equalization. The words relied upon are these: "to the intent that she may re-
"ceive as much as my other children, to all of whom I have

" made large gifts upon their respective marriages." The testator is here speaking of the four·thousand dollars to his· daughter Catharine for a marriage portion ; and it is evident, from the expressions which are used, that he had given similar portions or outfits to his son and married daughters, and, as Catharine was the only one then unmarried, he intended to be as liberal to her. So far, the manifest object of the bequest was to make her equal in this particular with his other children. But the testator had further objects in view, besides the mere equalization of his children's marriage portions. He was about. to provide a dwelling-house for each of them. And it may fairly be inferred, that he considered the relative value of the same, and arranged the gifts in such a way (taking into account what each had received and would receive in the specific be-quests under the will) as to cause them to fare alike as nearly as possible. Therefore, in fixing upon the sum in cash to Catharine, in addition to a house and lot, he contemplated the two bequests as forming together a portion of his estate and equal in amount with the benefits which his other children had or would receive. If this be so, the value of her house and lot and the legacy form the standard by which we are to ascertain the extent of " an equal share."

The houses and lots devised to the daughters were probably of different values ; and if the one given to Catharine should prove to be the greatest in worth, it would still afford no reason why it should not, in conjunction with the four thousand dollars, be considered the standard : because it might only show that she had previously received less from her father than the other children. No house, it is true, is devised to the son ; but this again does not form an objection·to the present mode of con-sidering the subject : because it is to be inferred from the will, indeed, the parol evidence shows, how a house and lot were conveyed by the father to the son. I see no insuperable ob-jection to the admissibility of this fact from extrinsic evidence.

Having thus arranged the bequests of specific parts or por-tions of his property to his then children, by putting them upon an equal footing, he proceeded to dispose of the residue of his estate in equal parts among them, giving to each a fifth thereof.

Thus it stood by the will as originally made.

When he came to republish the will and make a codicil, he undertook to provide for an after-born child or children and so as to put such latter child or children upon an equal footing with the rest. This is not left to conjecture. It is clearly expressed.

The codicil, as it has been before remarked, forms a part of the will; by attraction, the latter is brought down to the former; and the whole is made to speak as one instrument from the time the codicil is made. What, then, is the language of the whole combined? I have shown what must have been deemed by the testator as an equal share among his children under the will; and I see nothing in the codicil to change this view. The after-born child is to have an equal share with the other children. This is plain and intelligible: but, an equal share of what? The testator says, "of my property." Here lies all the difficulty. The testator's "property," it is insisted, was only such as belonged to him at the time and did not embrace the estate which he had actually parted with to his children before making the will; and hence it is urged in argument, that, in determining the question upon the words "an equal share of "my property," regard can only be had to the property passing by the will, and also, since there is no equality in the shares of the other children, (except under the residuary clause) the complainant can only come in with them for an equal share of this part of the estate. If, however, I am correct in the view before taken, as indicative of the testator's intention, the first part of this proposition must fail. The testator holds out in his will the idea of an equal share among his children; and founds it upon the previous advances made to some of them coupled with the future gifts. The phrase "of my property," as used in the codicil, must be made to yield in order to effectuate the intention thus expressed. In *Vauchamp* v. *Bell*, 6 *Mad.* 346, Vice-Chancellor Leach says, "If by giving to the words, which a "testator has used, their literal and technical effect, inconsistent "and absurd conclusions must necessarily follow, and if by "understanding such words more largely, the whole will would "be rendered rational and consistent, the court which departs

" from the literal and technical sense of the words does not " adopt conjecture as opposed to express intention, but has " recourse to a sound rule for collecting what is the intention " which is really meant to be expressed." Upon this principle, I see no difficulty in extending the meaning of the words "my " property" so as to embrace the property which he had given as well as what he was about to bequeath and devise. And here I may remark, that, although the property in which the posthumous child is permitted to participate with the other children is only such as passes to them by the will, yet it was competent for the testator, in pointing out the mode by which her share or any other shares should be ascertained, to refer to the advances made to any of his children, and to direct such advances to be taken into view in ascertaining the shares of each individual, upon the same principle which governs in cases of intestacy under the statute of distributions.

If the foregoing be not the true construction to be given to the will and codicil, there is only one other which can, by any possibility, be resorted to, without doing violence to the language: namely, to consider a tenancy in common created between the complainant and the other children in all the property specifically devised to each of them. Should this construction be adopted and the literal import of the words of the codicil be adhered to, it would seem to follow that the complainant would take nothing less than a moiety of each specific bequest, which certainly could not have been intended by the testator; nor do I believe the will necessarily requires a construction which shall create a tenancy in common as to one-sixth and thereby subject the other daughters to embarrassment. Yet, if there be not a residuum sufficient to make up the complainant's share, I do not see how this consequence can be avoided.

As respects the other branch of the argument: that the complainant's share is limited to the residue, and it is only in this she is entitled to an equal share, I cannot admit it to be well founded. Such does not appear to be the meaning or fair construction of the will. The clause which gives her the share in question has an express reference to all the testator's pro-

perty, notwithstanding it may have been before appropriated
by the will, and of course comprises the parts devised in specie
as well as the residue. If she is only to take a sixth part of
the residue, it is plain she will not have an equal share of the
whole, which seems to have been a favorite object with the
testator, however difficult he may have rendered its accom-
plishment by the manner in which he has expressed his in-
tention.

Upon the whole, I am of opinion this posthumous child is
entitled to more than an equal share in the residuary estate;
and, I must decree, that the sum of four thousand dollars, and
a further amount equal to the value of the house and lot devised
to his daughter Catharine, are to be set apart and appropriated,
out of the moneys or assets in the hands of the executors, to
the benefit of and as belonging to the complainant and to go
towards equalizing her share. She is also to come in for a
sixth part of the residue with the other children.

The next question, no less important than the preceding, is,
whether the complainant's share is subject to the same trusts
and limitations as are declared by the will in respect to the
shares of the other daughters? It is obviously necessary to
settle this point now. The executors will then know how to
act in regard to the investment or payment over of the funds
belonging to the complainant. If she takes upon the same
terms as the other daughters, the four thousand dollars must
remain in the hands of the executors until the day of her
marriage, and, in the mean time, only the interest can be applied
to her use. Adopting the same mode of argument with re-
spect to the sum to be appropriated in the place of a dwelling-
house, she can only have a life estate in this, subject to the
special limitations over; while her share of the residue must
be taken and held by the executors upon the trusts prescribed
in relation to the other daughters' shares. If, on the other
hand, the devise to her is absolute and without any special
limitations or trusts, then the executors have only to pay or
deliver over her share under the directions of the court; and
be discharged from all further responsibility concerning this
part of the estate. In examining the question, I have met with

1832.

LAWRENCE
v.
LAWRENCE.

no case having an immediate bearing upon it. A few cases have been cited to show, how, where the words of a bequest are positive, they are not to be controlled by inferences arising from other parts of the will; and it is insisted, that where the testator has imposed no restrictions or special limitations, none can be raised by implication. As a general rule, an express estate is not to be varied by implication: 2 *Preston on Estates*, 529. But the question still is, whether the testator has not imposed restrictions upon and attached special limitations to the bequest in favor of after-born children by the manner of the gift itself and by a necessary construction of the codicil. After making provision for the elder children, as is mentioned in the will, giving his son a share, in fee, and each daughter a life estate merely, accompanied by a trust as to a part, he provides for after-born children, by saying: "such child or children " shall have an equal share of my property with my other " children"—evidently intending to put them upon the same footing. To what then do the words, " an equal share of my " property" apply, as regards the question now under consideration? It appears to me they apply to the estate or interest which the party is to take in the subject of the devise, as well as to the thing devised, whether it be money, chattels or lands. There cannot be an equal share in the property to be divided among several persons, unless reference is had to the duration or time for which the right of enjoyment is to continue, which forms the quantity of the estate, as well as to the manner in which the right to such enjoyment is to be exercised, wherein consists its quality: 1 *Prest. on Est.* 21, 22. For it is certain, if one child takes an estate for life in a parcel of land or merely the interest or income out of personal property, without the right to control or dispose of the capital, and another child takes a similar parcel of land in fee and, instead of being limited to the income of personal property, has the whole of the capital or principal sum at command, there is no equality between them in respect to such property. When it is looked at in this point of view, it does not seem to admit of a doubt that the complainant is to be put upon the same basis, as well in regard to the quantity and quality of estate in the property

devised to her, as in regard to the thing devised. Hence it follows, she is to take upon the like terms and under the same limitations and restrictions as the other children. But the other children do not all take alike: the son is entitled to his share in fee and the daughters have a very different interest or estate in their shares; and it is therefore said, the codicil may as well refer to the limitations connected with the gift of the son's share as of the daughters. I think, however, considering the words of the codicil, that the after-born children were to come in with his other children and take a share of the property, notwithstanding it was, in the will, before appropriated; for the intention is sufficiently manifest, that if a daughter, she should take as the other daughters, and if a son, in like manner as the son named in the will. The uncertainty, at the time, of the sex of such after-born child can make no difference. It affords to my mind no reason why the testator may not be considered as intending to keep up the same distinction which he had already made in this respect between his son's and his daughters' shares; and that by the codicil, as well as by the will, he meant to give merely life estates to daughters, to preserve those estates for their separate use; and also give them and their children the benefit of survivorship as between themselves. I see no way, consistently with the whole scope and object of the will, by which the complainant can take, except upon those terms. If it be not so, there is a want of reciprocity under the special provisions of the will. In case of the death of the other daughters without issue living at the time of their decease, the complainant would clearly be entitled to a share of the property devised to them: and both reason and common sense dictate the propriety of giving them a chance of getting an equal portion of her share. I do not think this part of the case depends so much upon the doctrine of implication of cross-remainders or of cross-executory limitations as laid down in some of the books (see *Jarman's ed. of Powell on Devises, vol. 2, chap. 31, 32, p. 604 and 624,*) as upon the force of the words used in the codicil when taken in connection with the context of the will.

The present question is not upon the executory trusts and limitations contained in the will. It is not, as to what may be

their legal effect or the rights hereafter to grow out of them *inter se*: but whether the complainant is to take subject to those trusts and limitations, whatever may be their operation. It is, therefore, a question of construction and not one of implication.

I am of opinion she must take upon the same terms and subject to the same trusts and limitations as the other daughters; and that the executors are trustees for her as well as for them.

----

The court then went into an enquiry in order to ascertain whether the son of the testator was to be considered as a partner with the father in matters of business, but as this part of the case did not involve any points of general interest, the remainder of the opinion is not given.